**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NATIONAL ELECTRICAL BENEFIT FUND ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. TDC-16-1685** |
| ) | |
| CODE ENGINEERING SERVICES, INC. ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff National Electrical Benefit Fund (the "NEBF" or "Plaintiff")'s Motion for Default Judgment. ECF No. 7.[1] Defendant Code Engineering Services, Inc. ("Defendant") has not filed a response and the deadline for the response elapsed on August 26, 2016. *See* Loc. R. 105.2.a (Jul. 1, 2016). Having reviewed the filings, no hearing is deemed necessary. *See* Loc. R. 105.6. For the reasons stated herein, the undersigned recommends that, following the time to object to this Report and Recommendation, Plaintiff's Motion for Default Judgment be GRANTED.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff, the NEBF, is "a multiemployer employee pension benefit plan within the meaning of Section 3(2) of [the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA")], 29 U.S.C. § 1002(2), that has been established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA")." ECF No. 1 ¶ 4. Defendant is "an employer engaged in an industry affecting commerce, is contractually and legally obligated to

---

[1] On November 10, 2016, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Chuang referred this case to the undersigned to review a default judgment and/or make recommendation concerning damages. ECF No. 9.

submit contributions to the NEBF, and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5)." ECF No. 1 ¶ 5.

Plaintiff initiated this litigation on May 27, 2016. In its complaint Plaintiff alleges "Defendant is a signatory, and has been a signatory continuously during all relevant periods, to collective bargaining agreements (the "<u>Collective Bargaining Agreements</u>") with IBEW Local Union 134 as the collective bargaining representatives of Defendant's employees." ECF No. 1 ¶ 6. Pursuant to these Collective Bargaining Agreements ("CBAs"), Defendant "has been and is also bound to all terms and conditions of the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund (the "Trust Agreement") which has governed the administration of the NEBF at all times relevant to this action." *Id.* ¶ 7. As alleged by Plaintiff, despite Defendant's obligations, "Defendant has been delinquent in making contributions to the NEBF on behalf of its employees covered by the Collective Bargaining Agreements." *Id.* ¶ 8.

Based on a review of its records and the auditing of Defendant's books and records, Plaintiff claims Defendant failed to report or pay contributions owed to Plaintiff in connection with work performed in 2011-2012 ($2,179.76) and 2013-2014 ($6,302.78). In April 2014 and March 2015 Defendant reported but failed to pay $5,501.25. *See id.* ¶¶ 9-11. Additionally, as of the date of the complaint, Defendant owes Plaintiff interest in the amount of $3,288.42 and liquidated damages in the amount of $2,796.76. *Id.* at 5. Moreover Plaintiff seeks to recover all costs incurred to recover the delinquent contributions including reasonable attorneys' fees and costs.

This court's jurisdiction is based on Section 502(e) of ERISA, 29 U.S.C. § 1132(e)[2] and therefore is based on a federal question. *See* 28 U.S.C. § 1331.[3] Venue is proper in this judicial

---

[2] "(1) Except for actions under section (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary,

district because the NEBF is administered in Rockville, Maryland which is located in this district. 29 U.S.C. § 1132(e)(2).

Defendant was served a "Summons in a Civil Action" on June 17, 2016, *see* ECF No. 5, such that Defendant's answer was due July 8, 2016. *See id.*; Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant has not filed an answer or otherwise responded to the complaint. On August 9, 2016 Plaintiff moved for default judgment. *See* ECF No. 7. That same day Plaintiff moved for Clerk's Entry of Default for want of answer or other defense against Defendant. On August 9, 2016 the Clerk of Court entered an Order of Default against Defendant. *See* ECF No. 8. On November 10, 2016 Judge Chuang referred the case to the undersigned to review a default judgment and/or make recommendations concerning damages. *See* ECF No. 9.

## II.   DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments. Pursuant to Rule 55(b), the clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear and is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). Additionally, when a defendant is an individual, the plaintiff must certify or declare to be true under penalty of perjury whether the defendant is in military service.  50 U.S.C. app. § 521(b)(1) ("In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit—(A) stating whether or not

fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.").[4]

The entry of default judgment is a matter within the discretion of the court. *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). As this court noted in *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402 (D. Md. 2006), "[t]he United States Court of Appeals for the Fourth Circuit has a 'strong policy that cases be decided on the merits.'" *Id.* at 405 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). Nonetheless, "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421).

In determining whether to award a default judgment, the court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010); 10A Charles Alan Wright et al., *Fed. Prac. and Proc. Civ.* § 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the

---

[4] Defendant is a corporation and thus is not an infant, an incompetent person or subject to service in the United States military. ECF No. 7-1 at 1 (Hawkins Aff. ¶¶ 2-3).

default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."); *id.* (explaining that the court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

If the court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Samler*, 725 F. Supp. 2d at 494 (citing *Ryan*, 253 F.3d at 780-81). This is so because "an allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Hartford Fin. Servs. Grp. Inc. v. Carl J. Meil, Jr., Inc.*, No. WDQ-10-2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011) (quoting Fed. R. Civ. P. 8(b)(6)); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Int'l Painters & Allied Trades Indus. Pension Fund v. Metro Glass & Mirror, Inc.*, No. ELH-11-2389, 2012 WL 893262, at *2 (D. Md. Mar. 14, 2012) ("The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.")

In sum, the court must make two determinations.  First, the court must decide "whether the unchallenged facts in plaintiff['s] complaint constitute a legitimate cause of action[.]" *Samler*, 725 F. Supp. 2d at 494. Second, if the court finds that liability is established, it must "make an independent determination regarding the appropriate amount of damages." *Id.*

### A.    Liability

The complaint was served upon Defendant approximately five months ago, yet Defendant has not pleaded or otherwise asserted a defense by filing an answer. As a result, all of the factual

allegations made in Plaintiff's complaint not pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780. Plaintiff moved for a default judgment on August 9, 2016, and a Response in Opposition from Defendant was due August 26, 2016. To date, Defendant has not responded. It is within the court's discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enterprises*, 446 F. Supp. 2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him). Accordingly, the court should grant default judgment on this complaint if Plaintiff has established Defendant's liability.

Under 29 U.S.C. § 1145 (Delinquent contributions), Defendant is obligated to make contributions to the NEBF in accordance with the terms and conditions of the CBAs. When an employer such as Defendant fails to make the obligated contributions, a fiduciary of a multiemployer plan, in this case the Trustees on behalf of NEBF, may enforce the provisions of ERISA and the terms of the CBAs through a civil action. *See* 29 U.S.C. § 1132(a)(3).[5] If a court enters judgment in favor of the multiemployer plan in an action brought by the plan's fiduciary seeking to recover delinquent contributions from a defendant employer pursuant to 29 U.S.C. § 1145, the court shall award the plan—

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—

---

[5] "A civil action may be brought—by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Additionally, pursuant to the Trust Agreement, the Trustees are authorized to take all necessary actions to recover delinquent contributions. Further, the Trust Agreement "authorizes the Trustees to recover interest on the delinquent contributions at a rate of ten percent (10%) per annum, liquidated damages in an amount equal to twenty percent (20%) of the delinquency, and all costs, including attorneys' fees and audit expenses, incurred in collecting the delinquency." ECF No. 1 ¶ 17; *see* ECF No. 7-3 at 8-9 (Trust Agreement §§ 6.9.1 - 6.9.3, 6.9.5).

That, accepting as true Plaintiff's well-pleaded allegations (with supporting documentation provided via the motion for default judgment and affidavit of Angel Losquadro, Director, Audit and Delinquencies, NEBF), the undersigned finds Plaintiff has proven,

(a) Defendant is a signatory to the CBAs with IBEW Local Union 134;

(b) the NEBF is the multiemployer employee pension benefit plan established pursuant to an agreement between the IBEW and the NECA;

(c) the NEBF is a multiemployer plan within the meaning of 29 U.S.C. § 1002(2);

(d) in accordance with the CBAs, Defendant is obligated to submit contributions to the NEBF on behalf of employees covered by the CBAs;

(e) pursuant to the CBAs, Defendant is bound to all terms and conditions of the Trust Agreement which governs the administration of the NEBF;

(f) based on an audit of Defendant's books and records for the years 2011 and 2012 by an independent auditor on or about May 29, 2013, Defendant underreported its contribution obligation to NEBF by $1,369.48 for 2011 and $810.28 for 2012;

(g) a demand was made for the 2011 and 2012 contributions (plus interest, liquidated damages, and audit fees) but Defendant failed and refused to pay;

(h) based on an audit of Defendant's books and records for the years 2013 and 2014 by an independent auditor on or about October 9, 2015, Defendant underreported its contribution obligation to NEBF by $689.94 for 2013 and $5,612.84 for 2014;

(i) a demand was made for the 2013 and 2014 contributions (plus interest, liquidated damages, and audit fees) but Defendant failed and refused to pay;

(j) a review of NEBF's own records revealed Defendant underpaid what it reported to NEBF for the month of April 2014 by $217.86[6] and for the month of March 2015 by $5,283.66. Defendant subsequently paid the March 2015 contribution (without interest or liquidated damages). *See* ECF No. 7-8 at 2;

(k) the present outstanding amount of contributions (excluding interest and liquidated damages) owed by Defendant to NEBF is

---

[6] Ms. Losquadro claims Defendant underpaid what it reported to NEBF for the month of April 2014 by *$217.59*. ECF No. 7-2 at 2 (Losquadro Aff. ¶11). However a review of the August 1, 2016 NEBF Delinquency Report shows the underpaid contribution for the month of April 2014 was actually **$217.86**, a difference of twenty-seven (27) cents. *See* ECF No. 7-8 at 1.

$8,700.40.[7] This amount consists of the 2011-2014 audit findings plus the underpayment for April 2014;

(l) "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; and

(m) Defendant has violated 29 U.S.C. § 1145 since it has failed to make contributions to the NEBF in accordance with the CBAs and the Trust Agreement.

Accordingly, Plaintiff has established Defendant's liability under ERISA and the Trust Agreement, and therefore a default judgment as to the "Statement of Claim" outlined in Plaintiff's complaint is proper.

### B.    Damages

In this ERISA case Plaintiff is entitled to damages as outlined in 29 U.S.C. § 1132(g)(2). Plaintiff has submitted an affidavit of Angel Losquadro, Director, Audit and Delinquencies for the NEBF, in support of Plaintiff's request for unpaid contributions, interest, liquidated damages, and audit fees. *See* ECF No. 7-2. Plaintiff has also submitted an affidavit of Jennifer Bush Hawkins, Esquire, in support of Plaintiff's request for reasonable attorneys' fees and costs. *See* ECF No. 7-1.

Ms. Losquadro attests two independent audits of Defendant's books and records were conducted on or about May 29, 2013 (for the years 2011 and 2012) and on or about October 9, 2015 (for the years 2013 and 2014). Additionally, NEBF reviewed its own records of

---

[7] Ms. Losquadro asserts the principal amount of contributions currently sought from Defendant is $8,700.13. ECF No. 7-2 at 3 (Losquadro Aff. ¶ 11). This amount includes the unreported April 2014 contribution of $217.59, instead of the actual unreported April 2014 contribution of $217.86, as reflected on the August 1, 2016 NEBF Delinquency Report. *See* ECF No. 7-8 at 1. The undersigned added the difference of twenty-seven (27) cents to $8,700.13.

contributions by running a delinquency report on August 1, 2016. From these audits and internal review Plaintiff discovered delinquent contributions totaling $8,700.40 owed by Defendant for the years 2011-2014.[8] The undersigned recommends the Court award Plaintiff $8,700.40 in unpaid pension fund contributions.

According to Ms. Losquadro Defendant owes Plaintiff interest in the amount of $3,454.03. This interest is "calculated at a rate of 10% per annum calculated monthly on the delinquent contributions[.]" ECF No. 7-2 at 3 (Losquadro Aff.¶ 12). This calculated interest is also reflected on the NEBF Delinquency Report. *See* ECF No. 7-8 at 2. The undersigned recommends the Court award Plaintiff interest in the amount of $3,454.03.[9]

Plaintiff seeks liquidated damages on the outstanding contributions in the amount of $2,796.76. The amount Plaintiff seeks equals 20% of the outstanding or unpaid contributions. This calculation is reflected on the NEBF Delinquency Report. *See* ECF No. 7-8 at 2. The undersigned recommends the Court award Plaintiff $2,796.76 as liquidated damages.[10]

Plaintiff retained an independent auditor to audit Defendant's books and records. The first audit, conducted on or about May 29, 2013 for the years 2011 and 2012, cost $1,024.82. *See* ECF No. 7-5. The second audit, conducted on or about October 9, 2015 for the years 2013 and 2014, cost $573.04. *See* ECF No. 7-7. Plaintiff has demanded these audit fees which Defendant refused to pay. As a signatory to the CBAs with IBEW Local Union 134, Defendant is bound to

---

[8] The total amount includes the $217.86 shortage for April 2014.

[9] The undersigned has **not** adjusted the amount of interest claimed by Plaintiff even though the outstanding contributions due has increased by twenty-seven (27) cents. If an adjustment is warranted, Plaintiff may so notify the Court within the time period permitted for filing written objections to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2).

[10] The undersigned has **not** adjusted the amount of liquidated damages sought by Plaintiff even though the outstanding contributions due has increased by twenty-seven (27) cents. If an adjustment is warranted, Plaintiff may so notify the Court within the time period permitted for filing written objections to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2).

all terms and conditions of the Trust Agreement which governs the administration of the NEBF. When an employer such as Defendant has failed to make required contributions, the Trustees are authorized and empowered to impose on and receive all costs of any audit. *See* ECF No. 7-3 at 7 (Trust Agreement § 6.9.1). Audit costs constitute "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). *See La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 353 (E.D.N.Y. 2009). The undersigned finds the amount of the audit fees reasonable. The undersigned recommends the Court award Plaintiff $1,597.86 for audit fees.

In addition to pre-judgment interest, Plaintiff seeks post-judgment interest at a rate of 10% per annum until delinquent contributions are paid in full. *See* ECF No. 1 at 5. A more appropriate award of post-judgment interest would be in accordance with 28 U.S.C. § 1961(a).[11] The undersigned recommends the Court direct post-judgment interest, as calculated pursuant to 28 U.S.C. § 1961, continue to accrue until such time as the judgment is satisfied.

Finally, Plaintiff incurred legal fees and costs totaling $1,906.50. This claimed expense is supported by the affidavit of Jennifer Bush Hawkins, Esquire. *See* ECF No. 7-1 at 2 (Hawkins Aff. ¶ 6). Considering Ms. Hawkins' affidavit, the twelve (12) factors used in determining a reasonable fee under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and this court's local guidelines regarding hourly rates, the undersigned finds the requested fees and costs, which total $1,906.50, are reasonable. Ms. Hawkins has been practicing law for approximately 22 years. Her hourly rate of $379 is within the range of this court's local guidelines for lawyers admitted to the bar for twenty (20) years or more. The hourly rate of $139 for the paralegal is within the range of this court's local guidelines for paralegals and law clerks.

---

[11] "Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment, at rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."

The costs consist of a filing fee of $400 charged by this court and a fee of $300 for the process server. The cost for this service would have been $150 but the first attempted service was unsuccessful at the initial address. Service was successful at a subsequent address. *See* ECF No. 7-1 at 3. The undersigned recommends the Court award Plaintiff $1,906.50 in attorneys' fees and costs.

## RECOMMENDATIONS

The undersigned summarizes the recommendations as follows:

(a) The Court grant Plaintiff's Motion for Default Judgment (ECF No. 7);

(b) The Court award Plaintiff $8,700.40 for delinquent pension fund contributions;

(c) The Court award Plaintiff $3,454.03 in interest;

(d) The Court award Plaintiff $2,796.76 as liquidated damages;

(e) The Court award Plaintiff $1,597.86 as audit fees;

(f) The Court award Plaintiff $1,906.50 in attorneys' fees and costs;

(g) The Court direct post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, continue to accrue on the judgment until satisfied by Defendant; and

(h) The Court grant any other and further relief as it deems appropriate.


November 28, 2016                           _____/s/_____
                                                  WILLIAM CONNELLY
                                            UNITED STATES MAGISTRATE JUDGE